Filed 4/25/22  P. v. Hampton CA4/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>EDDIE LEE HAMPTON,<br><br>　　　Defendant and Appellant. | E074416<br><br>(Super.Ct.No. FSB17394)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Reversed and remanded with directions.

Siri Shetty and Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Eddie Lee Hampton appeals from the superior court's order denying his petition to vacate his murder conviction and obtain resentencing relief pursuant to Penal Code[1] section 1170.95.  In our prior opinion, we affirmed the superior court's ruling, after which defendant successfully petitioned the Supreme Court for review.

The Supreme Court transferred the case to us with directions to vacate our earlier opinion and reconsider our decision "in light of Senate Bill No. 775 (Stats. 2021, ch. 551) and *People v. Lewis* (2021) 11 Cal.5th 952" (*Lewis*).  We vacated our decision on February 25, 2022, and allowed the parties to file supplemental briefs limited to matters arising after the previous decision in this matter.  In his supplemental brief, defendant contends the matter should be remanded for further proceedings because the trial court improperly engaged in factfinding at the prima facie stage to determine that he was the actual killer.  Having now reconsidered the matter, we will reverse the order denying the petition for resentencing and remand the matter to the superior court with directions to issue an order to show cause and to conduct an evidentiary hearing on the petition.

---

[1]  All future statutory references are to the Penal Code.

2

# FACTUAL AND PROCEDURAL HISTORY

## A. FACTUAL HISTORY[2]

Sheryl Hilt was codefendant Marlon Deshon Bayliss's girlfriend. As of November 22, 1996, they had lived together for six or seven months. On the evening of November 22, 1996, she, Bayliss, defendant, Bayliss's brother Tommy, and Mark Burley were together at Hilt's and Bayliss's house. Sometime during the afternoon or evening, Burley left.

At 10:00 or 11:00 p.m., Hilt overheard a conversation between Bayliss and defendant; Tommy Bayliss was present with them, but Tommy did not appear to be taking part in the discussion. Bayliss and defendant were talking about doing a "jack move" (a robbery). They talked about using defendant's car and robbing a bar.

At 2:00 or 3:00 a.m., on November 23, defendant and Bayliss left the house together. Defendant carried a shotgun wrapped in a sheet. Hilt thought they left in defendant's car, because Tommy's gray car was still parked outside the house.

Bayliss returned to the house around 4:00 or 5:00 a.m. As he got into bed, he told Hilt that "something went wrong."

On November 23, 1996, David Reno was staying at a house on Ninth Street in San Bernardino. At approximately 3:00 a.m. on that date, he was outside smoking and saw a dark-colored car making repeated turns and maneuvers up and down Ninth Street. After

---

**2** A summary of the factual background is taken from this court's nonpublished opinion from defendant's and codefendant's prior appeal in case Nos. E023847/E023848. (*People v. Bayliss & Hampton* (June 14, 2000, E023847/E023848) [nonpub. opn.] (*Bayliss & Hampton*).)

one of the passes, the dark car turned in at an apartment building on Ninth Street. Soon thereafter, Reno saw two African-American men walk by wearing dark clothing and knit caps or beanies. One of the men carried a shotgun. Reno saw the men walking in the direction of a nearby liquor store.

After five or 10 minutes, Reno heard gunshots. The gunshots sounded as if they came from the liquor store. The same two men ran past Reno; one of them carried a shotgun, but he could not tell if it was the same man who previously carried the shotgun.

Kenneth and Denyse Elder lived in a nearby apartment and heard gunshots around 3:00 a.m. Kenneth saw a car pull up to a dumpster, and a man exit the car and throw something over a brick wall. He observed two African-American men, who looked like defendant and Bayliss, walk toward the laundry room. Kenneth and Denyse, who also saw the vehicle, thought it was a Mustang. Later that morning, the Elders looked into the dumpster and found a blue Pendleton shirt, and on the other side of the brick wall, they found a revolver. Investigators found a knit cap and a baseball cap in the area. Hilt had seen defendant wearing the blue Pendleton shirt on the night he planned the robbery. Hilt also saw the baseball cap and knit cap in the house the night of the robbery, but the caps were gone after defendant and Bayliss left. Hilt had seen other people wearing the caps on prior occasions.

Around 3:30 a.m., the San Bernardino County Sheriff's Department received a silent alarm from the liquor store. Deputies responded to the scene and found the proprietor lying on his back in a pool of blood. The victim was still moving but did not

4

respond to a deputy's questioning. The victim later died at the hospital from gunshot wounds. Nearly a dozen shotgun pellets inflicted wounds, mostly to the victim's front and right side; he had apparently been turning away from the blast. The pellets struck many of the victim's internal organs, including the liver, right kidney, intestines, and a major blood vessel in his leg.

On the evening of November 23, 1996, an anonymous tipster called the sheriff's station and reported that two people, identified as "Ace" and "Tony" had been talking about their involvement in the murder at the liquor store. After further investigation, detectives learned that one of the men, "Ace," was codefendant Bayliss. During the course of the investigation, investigators also received information which led them to discover a .22-caliber handgun wrapped in newspaper, and a knit cap in a plastic baggie, buried behind Hilt's and her sister's residences, respectively.

Two months later, on January 16, 1997, deputies arrested defendant and Bayliss. Defendant lived near the liquor store, and the time of his arrest, was driving a black Thunderbird.

Inside the liquor store, deputies recovered shells and pellets that indicated a shotgun had been used in the killing. Other shotgun pellet strikes were found outside the building. They found shoeprints and tire tracks in dirt nearby and took impressions of the shoeprints and tire tracks. Plaster casts of the tire tracks matched the tires on defendant's black Thunderbird. The shoeprints matched a pair of shoes owned by Mark Burley.

David Reno identified defendant's Thunderbird as the vehicle he had observed on the morning of the incident.

Defendant presented an alibi defense. His wife testified that she had used the family car, the black Thunderbird, to attend school on Friday evening, November 22, and Saturday morning, November 23, 1996. She arrived home from school at 10:30 p.m. on Friday, and soon afterward, she and defendant drove to defendant's sister's house, but the sister was not home, so they returned home. After preparing their children for bed, defendant's wife asked him to go to his sister's house again. Defendant returned home before midnight, and they went to bed. The next morning, defendant's wife drove the car to school in Riverside.

Bayliss elected not to present an affirmative defense, though he did call some of the prosecution witnesses and examined them for impeachment purposes.

The trial court instructed the jury on three theories of murder—direct perpetrator, natural and probable consequences of robbery or attempted robbery, and felony murder.

B.    PROCEDURAL HISTORY

Defendant and Bayliss were each charged with one count of first degree murder (§ 187). The information included allegations as to each defendant that he personally used a shotgun in the commission of the offense (§ 12022.5, subd. (a)), and that a principal was armed with a shotgun (§ 12022, subd. (a)(1)). The information further alleged that each defendant had suffered a prior strike conviction (§ § 667, subds. (b)-(i),

6

1170.12, subds. (a)-(d)).  The information was amended as to defendant Bayliss to allege an additional count that he was an accessory to murder (§ 32).

The trial court impaneled a separate jury for each defendant, and bifurcated trial on the strike priors.  Defendant's jury found him guilty of murder in the first degree and found true the allegations that he personally used a shotgun and that a principal was armed with a shotgun.  Bayliss's jury found him guilty of first degree murder, and of being an accessory to murder.  Bayliss's jury found true the allegation that a principal was armed with a firearm in the commission of the murder.  In a bifurcated court trial, the court found true the strike prior allegations as to each defendant.  Defendant was sentenced to an indeterminate term of 50 years to life for the murder (25 years to life, doubled due to the prior strike conviction), plus a determinate term of four years for the personal use of a firearm enhancement.  The court stayed the armed with the firearm enhancement.  Bayliss received a similar sentence.

Both defendants subsequently appealed.  This court rejected both defendants' contentions and affirmed the judgment in a nonpublished opinion filed on June 14, 2000. (*Bayliss & Hampton*, *supra*, E023847/E023848 at pp. 176, 205.)

On April 17, 2019, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95.[3]  He requested that his murder conviction be vacated and that he be resentenced because the record showed he and Bayliss were not the actual killers.  The petition further asserted that defendant and Bayliss were not at the scene of

---

[3] Defendant also included codefendant Bayliss's name in the petition.

7

the crime, and the prosecution failed to submit forensic evidence showing they aided and abetted or conspired to kill the victim.  Defendant also asserted the prosecution failed to produce evidence that he and Bayliss planned the robbery or acted with reckless indifference to human life.

On July 15, 2019, the trial court appointed counsel to represent defendant.

On July 25, 2019, the People filed a motion to strike the petition, contending Senate Bill No. 1437 was unconstitutional.  On August 30, 2019, at the request of the trial court, the People filed an informal response, arguing defendant failed to state a prima facie case for relief because the record demonstrated that defendant was the actual killer. Alternatively, the People asserted defendant was a major participant who acted with a reckless indifference to human life.  In support, the People attached a copy of this court's nonpublished opinion from defendant and codefendant Bayliss's prior appeal to both the motion to strike and the informal response.

On December 10, 2019, defendant filed a response contending that the facts contained in this court's opinion did not establish defendant was the actual killer. Defendant's response noted conflicting evidence on whether he aided and abetted the robbery, in addition to a lack of facts supporting this court's conclusion that defendant carried a shotgun wrapped in a sheet.

A hearing on the petition was held on December 20, 2019.  The trial court took judicial notice of this court's nonpublished opinion from defendant and Bayliss's prior appeal and denied the petition.  The court found the record of conviction proved

8

defendant was the actual killer and that defendant failed to state a prima facie case pursuant to section 1170.95 for relief. The court explained, "Having read that, I don't see how we can come to any conclusion other than [defendant] was the actual killer. There doesn't seem to be any dispute about that; not withstanding what's in this brief."

Defendant timely appealed from the denial of his 1170.95 petition. We affirmed the trial court's order denying the petition, finding the record of conviction establishes, as a matter of law, that defendant is not eligible for relief since he was the actual killer. (*People v. Hampton* (April 29, 2021, No. E074416) [nonpub. opn.].) Defendant successfully petitioned the Supreme Court for review. On February 23, 2022, the Supreme Court transferred the case to us with directions to vacate our opinion and reconsider the decision in light of Senate Bill No. 775 and *Lewis*, *supra*, 11 Cal.5th 952. We vacated our decision and allowed the parties to file supplemental briefs.

## DISCUSSION

Defendant contends the matter should be remanded for further proceedings in light of Senate Bill No. 775 and *Lewis*, *supra*, 11 Cal.5th 952 because "[n]othing in the record of conviction—the jury instructions, verdicts, or the non-hearsay portions of the prior appellate court opinion—established that [he] was the actual killer as a matter of law" and "any such determination necessarily rested on judicial fact-finding." The People argue that the trial court did not improperly engage in factfinding at the prima facie stage and properly denied the petition for resentencing because the record of conviction "conclusively" demonstrates that defendant was the actual killer.

9

A.     SECTION 1170.95

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 to " 'amend[ ] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); see Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, at pp. 842-843, 847-848.)

New section 188, subdivision (a)(3), thus provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." New section 189, subdivision (e), limits the felony-murder rule exception to the malice requirement to circumstances where the People prove the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437 also "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences

10

doctrine to seek relief." (*Gentile*, *supra*, 10 Cal.5th at p. 843; see *Lewis*, *supra*, 11 Cal.5th at p. 959.) Pursuant to section 1170.95, an offender must file a petition in the sentencing court declaring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine . . . [;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder [;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)-(3); see § 1170.95 subd. (b)(1)(A).)

The trial court then determines whether the petition is facially sufficient under section 1170.95, subdivision (b). (*Lewis*, *supra*, 11 Cal.5th at p. 960.) If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and could not now be convicted of murder because of changes to section 188 or 189 (§ 1170.95, subd. (b)(1)(A)), the court then must appoint counsel to represent the petitioner upon his or her request pursuant to section 1170.95, subdivision (c). (*Lewis*, at pp. 957, 959-960, 966.) Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must

determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (See § 1170.95, subd. (c); *Lewis*, at pp. 964, 966.)

In determining whether the petitioner has made a prima facie showing, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.) "[T]he trial court should not decide unresolved factual issues that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811-812.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*." (*People v. Harden* (2022) 76 Cal.App.5th 262, 270 (*Harden*).) " ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,' " ' thereby deeming him or her ineligible. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) For example, if the record shows that the jury was not instructed on either the natural and probable

consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law. [Citation.] A finding of ineligibility at the prima facie stage may also be based on a legal holding from a prior appellate opinion arising from the conviction. [Citation.]" (*Harden*, at p. 270, citing *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 & *Lewis*, at p. 972.)

If the petitioner makes a prima facie showing under section 1170.95, subdivision (c), the court must issue an order to show cause and hold a hearing "to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 853.)

While defendant's appeal was pending before our Supreme Court, the Governor approved Senate Bill No. 775 (2020-2021 Reg. Sess.), which became effective on January 1, 2022. (Stats. 2021, ch. 551.) In pertinent part, this bill amends section 1170.95 to "[c]odif[y] the holdings of *People v. Lewis* (2021) 11 Cal.5th 952, 961-970, regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case" and to "[r]eaffirm[ ] that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt." (Stats. 2021, ch. 551, § 1; Cal. Const., art. IV, § 8.)

Among other changes, Senate Bill No. 775 also amends subdivision (d)(3) of section 1170.95, which specifies the evidence that may be considered at a section 1170.95 hearing following issuance of an order to show cause. As amended, section 1170.95, subdivision (d)(3) provides in part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. *The court may also consider the procedural history of the case recited in any prior appellate opinion.*" (Italics added.)

## B. STANDARD OF REVIEW

We review questions of statutory interpretation de novo. (*Lewis*, *supra*, 11 Cal.5th at p. 961.) As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the Legislature's intent. (*Ibid.*; *People v. Park* (2013) 56 Cal.4th 782, 796.) We begin by examining the statute's words, as the most reliable indicator of legislative intent, giving them a plain and commonsense meaning. (*Lewis*, at p. 961; *People v. Law* (2020) 48 Cal.App.5th 811, 819, review granted July 8, 2020, S262490.)

14

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing. [Citation.]" (*Harden*, *supra*, 76 Cal.App.5th at p. 270.)

C.     ANALYSIS

Here, a person was killed during an attempted robbery in which defendant participated. As previously noted, defendant was tried under three theories of murder—as a direct perpetrator, under the natural and probable consequences doctrine, and under the felony-murder rule. Two of them—felony-murder and the natural and probable consequences doctrine—have been changed or abrogated since his conviction. A hearing under section 1170.95 would be required if defendant was convicted under one of those theories to determine if his murder conviction should be set aside.

The People argue that the record of conviction "conclusively" shows defendant was the actual killer because his jury specifically found that he personally used the murder weapon—a shotgun—in the commission of the murder. Our record, however, indicates that the jury did *not* necessarily find that defendant was the actual killer. Each of the defendants in this case may have possessed any of three firearms: a .38-caliber revolver, a .22-caliber handgun, and the shotgun that was used to commit the murder. The jury was instructed that when it determined whether defendant personally used a firearm during the attempted robbery, the firearm could be "a shotgun, pistol or revolver." Further, defendant could have used the firearm because he "intentionally displayed [it] in a menacing manner," as well as by firing it or by striking a person with

15

it. Thus, even though the jury found that defendant personally used a firearm, that finding could have been based on brandishing a firearm that was not the murder weapon.

Defendant's accomplice and codefendant, Bayliss, had a different jury. Bayliss's jury convicted him of first degree murder but without finding that he personally used a shotgun. The findings of Bayliss's jury are not relevant to determining what defendant's jury found, as nothing prevented the two juries from returning inconsistent verdicts. Both defendant and Bayliss could have been convicted on a felony-murder theory, for example, with no finding that a particular defendant was the actual killer. For these reasons, we conclude that our record does not demonstrate as a matter of law or "conclusively" that defendant was convicted as the actual killer, rather than under the felony-murder or natural and probable consequences theories on which his jury also was instructed.

It may be that defendant was the actual killer, but such a determination requires factfinding. According to our prior opinion, a witness saw defendant with a shotgun wrapped in a sheet roughly an hour before the robbery. However, defendant and Bayliss went to the robbery together in a car, and a witness who saw the duo carrying the shotgun near the robbery apparently did not identify a particular defendant as the one carrying it. A witness saw the robbers discard a different gun after the robbery. Another witness testified that Bayliss asked to borrow gloves the night before the murder and changed out of a bloody shirt after the murder.

16

Following the passage of section 1170.95, a trial court must determine whether defendant "could not presently be convicted of murder or attempted murder" because of the changes to the murder laws since his conviction. (§ 1170.95, subd. (b)(3).) This determination cannot be established at the prima facie stage by merely examining the record of conviction in this case.

## DISPOSITION

The order denying defendant's section 1170.95 petition is reversed. The matter is remanded to the superior court with directions to issue an order to show cause and to conduct an evidentiary hearing as required by statute. We express no opinion regarding the appropriate outcome of such hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.

17